UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

KAREN STEINLAUF and                              CASE NO.:
WILLIAM STEINLAUF, individually,
and on behalf of all others similarly situated,

      Plaintiffs,

v.

LUMBER LIQUIDATORS, INC.,
a Delaware Corporation,
LUMBER LIQUIDATORS LEASING, LLC,
a Delaware Limited Liability Corporation,
LUMBER LIQUIDATORS HOLDINGS, INC.,
a Delaware Corporation, and
LUMBER LIQUIDATORS SERVICES, LLC,
a Delaware Limited Liability Corporation,

      Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiffs, Karen Steinlauf and William Steinlauf, individually, and on behalf of themselves and all other similarly situated persons nationwide, hereby file this Class Action Complaint against Defendants, Lumber Liquidators, Inc., a Delaware corporation ("Lumber Liquidators"), Lumber Liquidators Leasing, LLC, a Delaware limited liability company ("Lumber Liquidators Leasing"), Lumber Liquidators Holdings, Inc., a Delaware corporation ("Lumber Liquidators Holdings") and Lumber Liquidators Services, LLC, a Delaware limited liability company ("Lumber Liquidators Services") (collectively referred to as "Defendants"), for the sale of Chinese laminate flooring containing toxic levels of the known carcinogen, formaldehyde. In support thereof, Plaintiffs state as follows:

# I. INTRODUCTION

1.      Defendants supervise and control the manufacturing, and package, distribute, market and/or sell laminate wood flooring products to consumers throughout Florida. Defendants affix labels on the packing for these laminate wood flooring products which state that the products comply with strict formaldehyde emission standards promulgated by the California Air Resources Board ("CARB") and enumerated in California's Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products ("CARB Regulations").  Cal. Code Regs. tit. 17, §§ 93120-93120.12.  Defendants represent that they comply with California's advanced environmental requirements, regardless of whether the products are ultimately sold in other states, such as Florida. However, certain laminate wood flooring products that are manufactured in China and sold by Defendants to Florida consumers are known to emit formaldehyde gas at levels that dangerously exceed the strict limits set forth in the CARB standards.  Defendants have failed to disclose the unlawful levels of formaldehyde emission to consumers.  Hence, Florida consumers are buying flooring products from Defendants that should not be distributed or sold in Florida.  They are also buying flooring products which Defendants claim are safe, when in fact they are not.

2.      Exposure to formaldehyde is linked to increased risk of cancer of the nose and sinuses, nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia.  Formaldehyde also causes burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain and nausea.  Formaldehyde has also been linked to the exacerbation of asthma in formaldehyde-sensitive individuals.

3.      Laminate wood flooring is generally composed of a base layer of pressed composite wood (particle board or medium-density fiberboard), which is a mixture of sawdust or

wood particles bonded together with glue or resin, and a top layer which is usually a veneer or other material such as a photographic image or picture of wood, affixed as a decorative surface. The CARB Regulations categorize medium density fiberboard as either "MDF," which has a thickness of greater than 8 mm, or "Thin MDF," which has a thickness of 8mm or less. Cal. Code Regs. tit. 17, §§ 93120.

4.     Inexpensive laminate wood flooring, often produced in China, can be a significant source of formaldehyde gas emissions since formaldehyde glues and resins are used to hold the pressed wood together.

5.     Defendants supervise and control the manufacturing of laminate wood flooring products from several manufacturing plants in China. Defendants sell those laminate wood flooring products at each of Lumber Liquidators' twenty two (22) retail stores located in Florida. Defendants also sell those laminate wood flooring products to Florida consumers through Defendants' retail website, www.lumberliquidators.com, and through their toll free customer service telephone line, 1-800-HARDWOOD (1-800-427-3966).

6.     From October 2013 through November 2014, three certified and accredited laboratories tested the formaldehyde emissions of laminate wood flooring purchased from several nationwide retail outlets, including Home Depot, Lowe's, and Lumber Liquidators. Of the dozens of products tested, by far the highest levels of formaldehyde were found in laminate wood flooring that was produced in China and sold by Lumber Liquidators. In contrast, similar products manufactured here in North America generally had much lower formaldehyde levels that complied with the formaldehyde emission standards promulgated by CARB. Similar products tested from Lumber Liquidators' competitors also showed significantly lower formaldehyde levels that generally complied with the CARB formaldehyde emission standards.

3

7.     Over the past several months, a sample of each available brand of Chinese-made laminate wood flooring product that Defendants sell in Florida was tested by a certified laboratory using the testing methodology specified by CARB.  As set forth in paragraph 24 below, each sampled product exceeded the CARB limit for formaldehyde emissions.

8.     Defendants do not give consumers any warnings about unlawful formaldehyde levels in its laminate wood flooring products; rather, they claim via their product labels, website, and warranties that their flooring products comply with strict formaldehyde standards. Defendants have repeatedly and consistently made false and misleading statements that their flooring products comply with CARB formaldehyde standards, and the even more stringent European formaldehyde standards.  Defendants' website falsely states, "Lumber Liquidators' products are safe and meet the highest quality and environmental standards…[w]e require that all our suppliers comply with California's advanced environmental requirements, even for products sold outside California."  http://www.lumberliquidators.com/sustainability/health-and-safety/?WT.ad=GLOBAL_FOOTER_Quality  (last visited on March 11, 2015).

9.     Plaintiffs seek to represent themselves and similarly-situated persons in Florida who have purchased Defendants' laminate wood flooring products that were manufactured in China, labeled as CARB compliant, and sold to consumers in Florida at any time from January 1, 2009 through the date of judgment herein ("the putative class").  Plaintiffs seek restitution of monies they and the putative class spent on Defendants' flooring products, injunctive relief enjoining Defendants' ongoing unlawful, unfair, and fraudulent business practices, and damages on behalf of themselves and the putative class.

## II. <u>PARTIES</u>

10.     Plaintiffs, Karen Steinlauf and William Steinlauf, are residents of Orange County, Florida, who on or about May 26, 2013 purchased from a Lumber Liquidators outlet store located at 9655 S. Orange Blossom Trail, Orlando, FL 32839, Dream Home Kensington Manor Sandy Hills Hickory 12 mm laminate wood veneer flooring, which was manufactured in China and contained toxic levels of the known carcinogen, formaldehyde (hereinafter referred to as the "Subject Flooring").

11.     Defendant, Lumber Liquidators, Inc., is incorporated in Delaware and has its principal place of business at 3000 John Deere Road, Toano, Virginia 23168. Lumber Liquidators, Inc. is licensed and doing business in the State of Florida.

12.     Defendant, Lumber Liquidators Leasing, LLC, is incorporated in Delaware and has its principal place of business at 3000 John Deere Road, Toano, Virginia 23168. Upon information and belief, Lumber Liquidators Leasing is a wholly-owned subsidiary of Lumber Liquidators, Inc., which is the sole member of Lumber Liquidators Leasing. As stated in ¶11 above, Lumber Liquidators, Inc., is incorporated in Delaware and has its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

13.     Lumber Liquidators Holdings, Inc. is incorporated in Delaware and has its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

14.     Lumber Liquidators Services, LLC, is incorporated in Delaware and has its principal place of business at 3000 John Deere Road, Toano, Virginia 23168. Upon information and belief, Lumber Liquidators Services is a wholly-owned subsidiary of Lumber Liquidators, Inc., which is the sole member of Lumber Liquidators Services. As stated in ¶11 above, Lumber

Liquidators, Inc., is incorporated in Delaware and has its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

## III. JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because a member of Plaintiffs' class is a citizen/resident of Florida and Defendants are citizens/residents of Delaware and Virginia, there are 100 or more class members, and the aggregate amount in controversy will exceed $5,000,000.

16.     The Court has personal jurisdiction over Defendants because Defendants are businesses which have sufficient minimum contacts with Florida, or otherwise intentionally availed themselves of the Florida market through the distribution and sale of laminate wood flooring products throughout the State of Florida to render the exercise of jurisdiction over them by the Florida courts consistent with traditional notions of fair play and substantial justice.

17.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(1) since Lumber Liquidators is a resident of the Southern District of Florida and all Defendants are residents of the State of Florida, pursuant to 28 U.S.C. § 1391(c)(2) which states that if an entity is a defendant, it is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction with respect to the civil action in question.

## IV. FACTUAL ALLEGATIONS

### A.     The CARB Formaldehyde Standard

18.     Defendants state on their website, as well as display on all packaging, regardless of where it is sold, including the product that the Plaintiffs purchased, that their product is CARB compliant.

19.     On January 1, 1988, the State of California officially listed Formaldehyde (gas) as a chemical known to cause cancer.

20.     In 1992, the CARB formally listed formaldehyde as a Toxic Air Contaminant in California with no safe level of exposure.

21.     The CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products in April 2007.  The formaldehyde emission standards became effective January 2009 and set decreasing limits in two Phases.  Cal. Code Regs., tit. 17, § 93120.2(a).

22.     The CARB Regulations apply to composite wood ("laminate") products including flooring.  Cal. Code Regs., tit. 17, § 93120.2(a).

23.     The CARB Phase 1 Emission Standard for MDF, which was in effect from January 1, 2009 to December 31, 2010, limited formaldehyde emissions to .21 parts per million ("ppm").  The Phase 2 Emission Standard for MDF dictates that as of January 1, 2011, MDF flooring products such as those involved in this action that are sold in California must emit no more than 0.11 parts per million ("ppm") of formaldehyde.  The CARB Phase 1 Emission Standard for Thin MDF, which was in effect from January 1, 2009 to December 31, 2011, limited formaldehyde emissions to .21 ppm. The CARB Phase 2 Emission Standard for Thin MDF dictates that as of January 1, 2012, thin MDF flooring products such as those involved in this action that are sold in California must emit no more than 0.13 ppm of formaldehyde. Cal. Code Regs., tit. 17, § 93120.2(a).  Hereinafter, the formaldehyde emission standards for both MDF and Thin MDF will be referred to as the "CARB limit."

**B.**     **Defendants' Laminate Wood Flooring Products**

24.     Defendants supervise and/or control the manufacturing and packaging of laminate wood flooring products in China that Defendants then distribute, market, and/or sell in Florida. Those laminate wood flooring products contain formaldehyde and emit formaldehyde gas at levels that exceed, and sometimes grossly exceed, the CARB limit.   Those laminate wood flooring products include the following:

a.     8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring;

b.     8 mm Dream Home Nirvana French Oak Laminate Flooring;

c.     12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring;

d.     12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring;

e.     12 mm Dream Home St. James Oceanside Plank Laminate Flooring;

f.     12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring;

g.     15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring;

h.     12 mm Dream Home Kensington Manor Imperial Teak Laminate Flooring;

i.     12 mm Dream Home St. James Vintner's Reserve Laminate Flooring;

j.     12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring;

k.     12 mm Dream Home St. James Golden Acacia Laminate Flooring;

l.     12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring;

8

m.      12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring;

n.      12 mm Dream Home Ispiri America's Mission Olive Laminate Flooring;

o.      12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring;

p.      12 mm Dream Home Kensington Manor Summer Retreat Teak Laminate Flooring;

q.      12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring;

r.      12 mm Dream Home St. James Brazilian Koa Laminate Flooring;

s.      12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring;

t.      12 mm Dream Home St. James Nantucket Beech Laminate Flooring;

u.      12 mm Dream Home St. James African Mahogany Laminate Flooring;

v.      12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring; and

w.      12 mm Dream Home St. James Cumberland Mountain Oak Laminate Flooring.

25.     CARB regulations apply to all of these flooring products.

26.     On information and belief, each of Defendants' laminate wood flooring products listed in paragraph 24 above are manufactured in China using a common formula, design or process.

27.     On information and belief, each of Defendants' laminate wood flooring products listed in paragraph 24 above emit formaldehyde gas at levels that exceed the CARB limit.

## V. DEFENDANTS MISREPRESENT THAT THEIR LAMINATE WOOD FLOORING PRODUCTS MEET CARB STANDARDS

28.     Despite unlawful levels of formaldehyde emissions from its laminate wood flooring products, Defendants misrepresent to consumers on their website, product packaging, and warranties that their laminate wood flooring products meet the CARB standards for formaldehyde emissions.



29.     Defendants' website leads consumers to believe that the company's laminate wood flooring products comply with the CARB formaldehyde standards when they do not.  The website states as follows:

> Is Lumber Liquidators Compliant with the California law?
>
> Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards.  The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified regulation limits.  The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.
>
> Does CARB only apply to California?
>
> Though it currently applies only to products sold in California,

Lumber Liquidators made a decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended to sell the products in California or any other state/country.

What extra steps does Lumber Liquidators take to ensure compliance?

In addition to the California Air Resources Board requirements, Lumber Liquidators regularly selects one or more finished products from each of its suppliers and submits them for independent third-party lab testing. This is done as a monitoring activity to validate ongoing quality control.

What are the California Air Resource Board Regulations?, lumberliquidators.com, http://www.lumberliquidators.com/ll/flooring/ca-air-resources-board-regulations?Wt.ad=GLOBAL_FOOTER_CaliRegCARB (last visited on March 11, 2015).

30.   In addition, the product packaging for Defendants' laminate wood flooring states: "CARB . . . Phase 2 Compliant Formaldehyde."  On information and belief, this statement is presented on all Lumber Liquidators' laminate flooring product packaging regardless of whether the flooring inside the packaging complies with the CARB standards.

31.   Defendants' purchase orders come with a warranty stating that the customer's purchased flooring products comply "with all applicable laws, codes and regulations," and "bear all warnings, labels, and markings required by applicable laws and regulations."  Purchase Order Terms and Conditions, lumberliquidators.com, http://www.lumberliquidators.com//ll/customer-care/potc800201 (last visited on March 11, 2015).

32.   Instead of warning consumers about formaldehyde emissions from its laminate wood flooring products, Defendants' website states that it has Third Party Certifiers approve its flooring products to meet CARB standards.

Regulations and Lumber Liquidators' Compliance

The California Air Reform Bill (CARB) requires that products containing Hardwood Plywood Veneer Core (HWP-VC), Hardwood Plywood Composite Core (HWP-CC), Particleboard and MDF be tested for emissions and products not meeting the strict standards for emissions may not be sold in California.

The Environmental Protection Agency has drafted national standards for formaldehyde emissions in composite wood products that are similar to those of California. Those standards have not yet been enacted.

All laminates and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified formaldehyde emission limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified. Though it currently applies only to products sold in California, Lumber Liquidators made a decision to require all of our suppliers to comply with CARB regardless of whether we intended to sell the products in California or any other state/country. In addition, our suppliers manufacture their products in accordance with the European standard which has stricter guidelines than the California. In addition to the CARB requirements, Lumber Liquidators regularly selects one or more products from each of its suppliers and submits them for independent third-party lab testing. This is done as a monitoring activity to validate ongoing compliance.

Formaldehyde–What is it?. Lumberliquidators.com, http://www.lumberliquidators.com/ll/flooring/Flooring101-formaldehyde-what-is-it (last visited on December 10, 2014, link no longer active)

33.     Defendants materially misrepresent the safety of its laminate wood flooring products by advertising its flooring products as compliant with the CARB limit when in fact they are not.

34.     Defendants make the material omission of failing to tell consumers that they are buying laminate wood flooring products with unlawfully high levels of formaldehyde.

35.     These laminate wood flooring products have been sold by Defendants for use in Florida for over four years.

36.     Defendants continue to distribute and sell their laminate wood flooring products to customers in Florida with the representation that they are CARB compliant, even though they are not.

## VI. <u>DEFENDANTS KNOWINGLY MISREPRESENT THE SAFETY OF THEIR LAMINATE WOOD FLOORING PRODUCTS</u>

37.     On information and belief, at all times relevant to this action, Defendants have knowingly misrepresented their laminate wood flooring products as CARB compliant and knowingly failed to disclose to consumers the unlawful levels of formaldehyde emissions from its laminate wood flooring products.

38.     At the same time that Defendant is representing in its public statements to consumers that the laminate wood products it sells are sourced from mills whose production methods are CARB compliant and that the products conform to CARB's specified formaldehyde emission limits, Defendant has acknowledged in statements made to the Securities and Exchange Commission that, "While our suppliers agree to operate in compliance with applicable laws and regulations, including those relating to environmental and labor practices, we do not control our suppliers.  Accordingly, despite our continued investment in quality control, we cannot guarantee that they comply with such laws and regulations or operate in a legal, ethical and responsible manner…[f]urther, we require our suppliers to adhere to our quality standards. While we do monitor our suppliers' adherence to such standards, there is no guarantee that we will identify every instance of non-compliance, if any."  Lumber Liquidators February 25, 2015 10-K to the United States Securities and Exchange Commission at p. 14, http://investors.lumberliquidators.com/index.php?o=25&s=127.     In the same SEC filing, however, Lumber Liquidators boasts that it oversees quality control in its Chinese mills:  "We are able to set demanding specifications for product quality and our own quality control and assurance teams are on-site at the mills, coordinating inspection and assurance procedures."  Lumber Liquidators February 25, 2015 10-K to the United States Securities and Exchange Commission at p. 3.

39.     On June 20, 2013, *Seeking Alpha*, a news website with millions of viewers, published a lengthy article documenting high formaldehyde levels in Chinese-made laminate flooring sold by Lumber Liquidators.  The author of the article, Xuhua Zhou, retained a certified laboratory to test three samples of Chinese-made laminate flooring sold by Lumber Liquidators. Zhou's article states, "The tested product, Mayflower 5/16" x 5" Bund Birch Engineered, emits a staggering three and half times over the government mandated maximum emission level.  The product is clearly not CARB compliant yet Lumber Liquidators tagged CARB compliance on the box."  Xuhua Zhou, *Illegal Products Could Spell Big Trouble At Lumber Liquidators*, *Seeking Alpha* (June 20, 2013, 2:33 PM ET), http://seekingalpha.com/article/1513142-illegal-products-could-spell-big-trouble-at-lumber-liquidators (last visited on March 13, 2015).

40.     On information and belief, high formaldehyde content resins and glues are less expensive and dry more quickly than low formaldehyde glues an d resins.  By using high formaldehyde content resins and glues rather than low formaldehyde content resins and glues, Lumber Liquidators' Chinese manufacturers are able to produce laminate wood flooring more quickly and at higher volumes thereby reducing costs and generating greater profits for Lumber Liquidators.

41.     On or about November 26, 2013, a putative federal securities class action lawsuit was filed against Lumber Liquidators in the United States District Court in the Eastern District of Virginia based on drops in the stock price following the *Seeking Alpha* article and its allegations concerning the formaldehyde emissions from Defendants' laminate wood flooring products. *Kiken v. Lumber Liquidators Holdings, Inc., et al.*, 4:2013-cv-00157 (E.D.Va).  This case is currently pending.

42.     On or about December 3, 2013, another putative class action lawsuit was filed against Lumber Liquidators in the same federal court alleging claims related to illegal formaldehyde emissions from Defendants' laminate wood flooring products.  *Williamson v. Lumber Liquidators Holdings, Inc.*, 1:13-cv-01487-AJT-TCB (E.D.Va.).  Although the case was dismissed due to a technicality, Lumber Liquidators was made aware during the pendency of that lawsuit of complaints and allegations that its laminate wood flooring products from China emit formaldehyde gas at levels that violate the CARB limit.

43.     Numerous Lumber Liquidators customers have posted internet complaints on Defendants' website concerning formaldehyde emissions, including Deborah of North Fork, California who posted on the Consumer Affairs website on September 11, 2014:

> We spent thousands of dollars and went with the LL recommended professional installer… the product we were sold was supposedly Made in the USA--nope, China. One of my children cannot walk barefoot on the floor because he will blister from the formaldehyde content. We saved for years for this floor, it will need to be replaced. Please RUN to another dealer. This company does not care about the customer one bit. This has been a devastating blow to our family. Consumer Complaints & Reviews, http://www.Consumeraffairs.com/homeowners/lumber_liquidators.html (last visited March 13, 2015)

44.     Based on these lawsuits, articles, and blog posts, Defendants knew or should have known that their laminate wood flooring products were not compliant with CARB standards. Despite this knowledge, Defendants failed to reformulate their flooring products so that they are CARB compliant or to disclose to consumers that these products emit unlawful levels of formaldehyde.  Instead, Defendants have sold and continue to sell laminate wood flooring products in Florida that exceed the CARB limit and it has continually represented to consumers that those products are CARB compliant.  On March 1, 2015, the CBS television news magazine *60 Minutes* aired a segment investigating Lumber Liquidators' laminate flooring.  During the

15

segment, *60 Minutes* reported that it conducted its own testing of Defendants' products and found that they exceed CARB standards, in some cases by as much as 1300%. *See* "Lumber Liquidators Linked to Health and Safety Violations," (March 1, 2015) http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-safety-violations/ (last visited March 13, 2015).

## VII. <u>FACTS RELATING TO NAMED PLAINTIFFS</u>

45.     On or about May 26, 2013, Plaintiffs, Karen Steinlauf and William Steinlauf purchased from a Lumber Liquidators Outlet store located at 9655 S. Orange Blossom Trail, Orlando, FL 32839, Dream Home Kensington Manor Sandy Hills Hickory 12 mm laminate wood veneer flooring manufactured in China.

46.     At the time that Plaintiffs purchased this laminate wood flooring, Defendants falsely represented that the Subject Flooring was compliant with CARB standards for formaldehyde emissions.  At the time of purchase, Defendants failed to inform Plaintiffs that the Subject Flooring actually exceeded the CARB formaldehyde emission limit and that formaldehyde is a chemical known to cause cancer.  Plaintiffs relied on Defendants' misrepresentations and/or omissions regarding compliance with CARB formaldehyde emission standards when deciding to purchase the laminate wood flooring products and, as a result, paid Defendants for products they would not have otherwise purchased.

47.     Plaintiffs would not have purchased this flooring had they known that it emitted unlawful levels of formaldehyde.

48.     If Defendants' laminate wood flooring becomes CARB compliant, Plaintiffs would likely purchase it in the future.

## VIII. CLASS ACTION ALLEGATIONS

49.     This case is maintainable as a class action pursuant to the Federal Rules of Civil Procedure § 23.

50.     Each of the Plaintiffs have purchased Defendants' laminate wood flooring products in Florida during the four-year period prior to the date of the filing of this action ("the Class Period"). Each such product purchased by each Plaintiff was labeled as compliant with the CARB standards.

51.     Plaintiffs are representatives of all other consumers who have purchased laminate wood flooring products from Defendants in Florida that were advertised and labeled as compliant with CARB standards, and are acting on behalf of those consumers' interests. Accordingly, Plaintiffs bring this action, pursuant to Federal Rules of Civil Procedure § 23, on behalf of themselves and a proposed Class of similarly situated consumers.  The similarly situated consumers are readily identifiable through Defendants' own business records, including but not limited to customer receipts or invoices for Defendants' flooring products.  The Class that Plaintiffs seek to represent is defined as follows:

> All persons in Florida who purchased from Defendant one or more Chinese-made laminate wood flooring products, advertised as CARB compliant, from January 1, 2009 through the date of judgment.

### Tolling of Statute of Limitations

Upon information and belief, Lumber Liquidators has known that its models of laminate flooring do not meet California's CARB emission standards for formaldehyde since at least January 1, 2009, if not earlier, and has concealed from and failed to notify Plaintiffs, Class Members, and the public of the true formaldehyde emission levels from its laminate flooring. Any applicable statutes of limitation have been tolled by Lumber Liquidators' knowing, active,

ongoing concealment and denial of the facts as alleged herein. Plaintiffs and Class Members have been kept ignorant by Lumber Liquidators of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs and Class Members could not reasonably have discovered that Lumber Liquidators' laminate flooring uniformly fails to comply with California's CARB emission standards for formaldehyde.

**Numerosity of Class**

52.     The potential members of the class as defined are so numerous that joinder of all Class Members is impracticable.  Although the precise number of such consumers is presently unknown, Plaintiffs believe that there are thousands of class members.  The exact number is easily ascertained from Lumber Liquidators' sales records, which are presently within Lumber Liquidators' control.

**Existence and Predominance of Common Questions of Fact and Law**

53.     There are questions of law and fact common to the class that predominate over any questions affecting only individual members of the class, including without limitation, whether, as alleged herein, (a) Lumber Liquidators' laminate wood flooring products sold in Florida exceed the CARB limit; (b) Lumber Liquidators' representation in package labeling and advertising that its laminate wood flooring products comply with the CARB limit was false; (c) Lumber Liquidators made the false statement about CARB compliance to the entire class; (d) Lumber Liquidators failed to disclose material information regarding the emission of unlawful levels of formaldehyde from its laminate wood flooring products; (e) Lumber Liquidators' representations that its laminate wood flooring products comply with the CARB limit have a capacity, likelihood or tendency to deceive or confuse the public; (f) Lumber Liquidators' representations that its laminate wood flooring products comply with the CARB

limit are misleading; (g) Lumber Liquidators' representations that its laminate wood flooring products comply with the CARB limit are likely to deceive reasonable consumers; (h) Lumber Liquidators' representations that its laminate wood flooring products comply with the CARB limit are material, as judged by an objective standard; (i) Lumber Liquidators' representations that its laminate wood flooring products comply with the CARB limit constitute unfair business practices under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Fla. Stat. §§ 501.201, *et seq*.); (j) Lumber Liquidators' sale of laminate wood flooring products that fail to comply with the CARB limit constitutes an unlawful business practice within the meaning of the FDUTPA; (k) Lumber Liquidators' representations that its laminate wood flooring products comply with the CARB limit constitutes negligence; (l) Lumber Liquidators' sale of laminate wood flooring products that fail to comply with the CARB limit constitutes negligence; (m) Lumber Liquidators' sale of laminate wood flooring products that fail to comply with the CARB limit constitutes a breach of the implied warranty of merchantability; (n) Lumber Liquidators' sale of laminate wood flooring products that fail to comply with the CARB limit constitutes a breach of its express warranties; (o) Lumber Liquidators' sale of laminate wood flooring products that fail to comply with the CARB limit constitutes an unjust enrichment; and (p) monetary relief can be calculated based on Lumber Liquidators' sales figures and an average retail sales price for the product. Resolution of these questions, which are common to all class members, will generate common answers that are likely to drive the resolution of this action.

**<u>Typicality</u>**

54.     The claims of the Plaintiffs are typical of the claims of the Class they seek to represent. Plaintiffs and Class Members have purchased laminate wood flooring products from Lumber Liquidators that were advertised as compliant with CARB standards, but instead emit

formaldehyde gas at levels that exceed the CARB limit.

55.     Plaintiffs and all Class Members were subjected to the same violations of their rights under Florida law by Lumber Liquidators and have suffered damages, including the cost of their flooring purchases resulting from Defendants' wrongful conduct, and the cost of installation of the unlawfully sold flooring products.  In addition, Plaintiffs and the Class Members are entitled to injunctive and equitable relief, as permitted by law, because Defendant's violations of state statutes have harmed the Class Members in a concrete and particular way, the violations are ongoing, and harm the public interest, especially when compared to Defendants' competitors who comply with the law.

**Adequacy of Representation**

56.     Each of the Named Plaintiffs will fairly and adequately represent and protect the interests of the Class Members.  The interests of Plaintiffs and Plaintiffs' counsel are not in conflict with those of the Class Members.  Plaintiffs and Plaintiffs' counsel will prosecute this action vigorously on behalf of the Class Members.  Plaintiffs' counsel is competent and experienced in litigating large class actions and other complex litigation matters.

**Superiority of Class Action**

57.     A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Each Class Member is entitled to restitution of the price of the laminate wood flooring product that he or she purchased that failed to comply with the CARB limit and should not have been sold in Florida, and the cost of installation and removal of the unlawfully sold flooring products.  Each Class Member has also been damaged and is entitled to recovery because Lumber Liquidators falsely advertised that their flooring was CARB compliant and/or omitted to tell consumers that their flooring products emitted unlawful levels of

formaldehyde.   The restitution due and damages suffered by individual Class Members are relatively small compared to the significant expense and burden of individual prosecution of this litigation.  Individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit against Defendant to recover damages stemming from Defendants' unfair and unlawful practices. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about the legality of Defendants' sales and advertising practices.  Further, a class action is superior as Defendants have acted in a manner that applies generally to the class, so that final injunctive relief and corresponding declaratory relief are appropriate respecting the class as a whole, thereby making it desirable to concentrate the litigation of class members' claims in a single forum.

**CAUSES OF ACTION**

**COUNT I**
**Violation of Florida's Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201, *et seq*.**

58.     Plaintiffs reallege the allegations incorporated in Paragraphs 1 through 57 as if each paragraph was fully restated verbatim herein.

59.     The Florida Deceptive and Unfair Trade Practices Act (hereinafter "FDUTPA") is expressly intended to protect "persons" from potentially confusing, unfair and/or deceptive trade practices.

60.     Defendants are a "person" within the meaning of the FDUTPA and, at all pertinent times, were subject to the requirements and proscriptions of the FDUTPA with respect to all of their business and trade practices described herein.

61.     Plaintiffs are "persons" "likely to be damaged" by Defendants' ongoing deceptive trade practices and fall within the class of individuals FDUTPA is intended to protect.

62.     Defendants violated the FDUTPA by engaging in the confusing, unfair and/or deceptive trade practices by engaging in false, misleading and unlawful advertising, marketing and labeling of the Subject Flooring.  Defendants' manufacture, distribution and sale of the Subject Flooring were similarly unlawful.

63.     Defendants' misleading marketing, advertising and labeling of the Subject Flooring was likely to deceive reasonable consumers who relied upon Defendants' marketing, advertising and labeling in making their decision to purchase the Subject Flooring from Defendants.

64.     Plaintiffs and other Class Members who purchased the Subject Flooring in Florida were injured by Defendants' deceptive and unfair trade practices.

65.     Defendants sold to Plaintiffs and Class Members the Subject Flooring, a product that would not have been purchased by Plaintiffs or Class Members had they known that the formaldehyde levels were toxic and failed to comply with CARB standards.

66.     As a direct and proximate result of Defendants' violations of the FDUTPA, Plaintiffs and Class Members have sustained damages they are entitled to recover from Defendants in an amount to be determined at trial.

67.     Additionally, pursuant to the FDUTPA, Plaintiffs are entitled to (a) a declaratory judgment that Defendants' actions as described above violate the FDUTPA and (b) preliminary and permanent injunctive relief to enjoin Defendants from such conduct and activity.  Plaintiffs seek equitable relief and to enjoin Defendants on the terms that the Court considers appropriate.

68     Defendants' conduct caused and continues to cause substantial injury to Plaintiffs. Unless preliminary and permanent injunctive relief is granted, Plaintiffs will suffer harm. Plaintiffs do not have an adequate remedy at law, and the balance of the equities weighs in favor

of Plaintiffs.

69.     At all material times, Defendants' deceptive trade practices were willful within the meaning of the FDUTPA and, accordingly, Plaintiffs and Class Members are entitled to an award of attorneys' fees, costs, and other recoverable damages and expenses of litigation.

**WHEREFORE**, Plaintiffs, Karen Steinlauf and William Steinlauf, individually, and on behalf of all others similarly situated, demand judgment against Defendants for compensatory damages, costs and interest as allowed by law, and for such other relief as the Court deems just, and demand a trial by jury on all issues so triable as a matter of right.

### COUNT II
### <u>Unjust Enrichment</u>

70.     Plaintiffs reallege the allegations incorporated in Paragraphs 1 through 57 as if each paragraph was fully restated verbatim herein.

71.     As a result of Defendants' deceptive and unfair trade practices, they induced Plaintiffs and Class Members to purchase the Subject Flooring which, after learning of its violation of CARB standards, is of no value to the Plaintiffs or Class Members.

72.     Based on these purchases, Defendants received the amount of the purchase price from each customer without providing the marketed product that each customer was entitled to receive.  Thus, it would be unjust for Defendants to retain the benefit without restitution to the Plaintiffs and Class Members for the amount of the purchase price paid to Defendants for the Subject Flooring.

**WHEREFORE**, Plaintiffs, Karen Steinlauf and William Steinlauf, individually, and on behalf of all others similarly situated, demand judgment against Defendants for compensatory damages, costs and interest as allowed by law, and for such other relief as the Court deems just, and demand a trial by jury on all issues so triable as a matter of right.

## COUNT III
### Negligence

73.     Plaintiffs reallege the allegations incorporated in Paragraphs 1 through 57 as if each paragraph was fully restated verbatim herein.

74.     DUTY: Defendants, as the developers, marketers and sellers of laminate wood flooring products, owed a duty to those individuals that chose to do business with them, including Plaintiffs and Class Members, to exercise reasonable care to ensure that the Defendants did not:

      a.     Misrepresent a fact or create a false or misleading product to be sold;

      b.     Make false representations about the quality and safety of the products to be sold; and/or

      c.     Conduct themselves in a manner that would jeopardize the safety of their customers by exposing them to excess quantities of unsafe chemicals such as formaldehyde.

75.     BREACH:  Defendants breached their duty by overseeing and controlling the production of, and developing, marketing and selling laminate wood flooring products which contained dangerous and toxic levels of formaldehyde in violation of the CARB standards.

76.     CAUSATION:  The negligence described above directly and proximately caused damages to Plaintiffs and Class Members in that it directly, and in a natural and continuous sequence, produced or substantially contributed to Plaintiffs' and Class Members' damages.

77.     DAMAGES:  As a direct and proximate result of the foregoing, Plaintiffs and Class Members have sustained damages, including, without limitations, the following:

      a.     Cost of purchasing the Subject Flooring;

      b.     Cost of tearing up the Subject Flooring;

      c.     Cost of replacing the Subject Flooring with new flooring;

     d.      Mental anguish and loss of capacity for enjoyment of life;

     e.      Cost of medical expenses due to formaldehyde exposure; and

     f.      Future pain and suffering associated with formaldehyde exposure.

**WHEREFORE**, Plaintiffs, Karen Steinlauf and William Steinlauf, individually, and on behalf of all others similarly situated, demand judgment against Defendants for compensatory damages, costs and interest as allowed by law, and for such other relief as the Court deems just, and demand a trial by jury on all issues so triable as a matter of right.

## COUNT IV
## Breach of Implied Warranty of Merchantability

78.     Plaintiffs reallege the allegations incorporated in Paragraphs 1 through 57 as if each paragraph was fully restated verbatim herein.

79.     Implied in the purchase of the Subject Flooring by Plaintiffs and Class Members is the warranty that the purchased product is legal and can be lawfully sold and possessed.

80.     Defendants knew or reasonably should have known that the Subject Flooring was unlawful for sale pursuant to The Toxic Substance Control Act, 15 U.S.C., 2601, *et. seq.*.

81.     The purchased Subject Flooring is unfit for the ordinary purpose for which it was intended and Plaintiffs and Class Members would not have purchased it had they known that it was illegal to own or possess.

82.     As a result of Defendants' mislabeled, illegal, and valueless product the Plaintiffs and Class Members were harmed since the Subject Flooring was unsuitable, useless, illegal and unsellable.

**WHEREFORE**, Plaintiffs, Karen Steinlauf and William Steinlauf, individually, and on behalf of all others similarly situated, demand judgment against Defendants for compensatory damages, costs and interest as allowed by law, and for such other relief as the Court deems just,

and demand a trial by jury on all issues so triable as a matter of right.

**COUNT V**
**Breach of Express Warranty**

83.     Plaintiffs reallege the allegations incorporated in Paragraphs 1 through 57 as if each paragraph was fully restated verbatim herein.

84.     Throughout the Class Period, Defendants have engaged in unlawful business acts and/or practices by expressly warranting on every package of laminate wood flooring products that it distributes and sells in Florida, as well as in promotional materials and product invoices, that the products comply with CARB formaldehyde standards and all other applicable laws and regulations when they do not.  This express warranty also appears on Defendants' website, and product invoices and instruction materials.

85.     Defendants' express warranty that their laminate wood flooring products comply with the CARB standards appears on every package of laminate wood flooring Defendants sell or have sold in Florida, including those sold to Plaintiffs and all Class Members.  This express warranty also appears on Defendants' website, and product invoices and instruction materials.

86.     Defendants' warranties became part of the basis of the bargain in selling laminate wood flooring products to Plaintiffs and Class Members.

87.     Defendants breached these express warranties by selling, and/or distributing the laminate wood flooring products, which fail to comply with the CARB standards.

88.     Plaintiffs and members of the Class paid money for the laminate wood flooring and paid to have the flooring installed in their homes, work, and other spaces.  However, Plaintiffs and the members of the Class did not obtain the full value of the advertised products.  If Plaintiffs and other members of the Class had known the true nature of the flooring products, that they emitted unlawful levels of a cancer-causing chemical, they would not have purchased

26

the laminate wood flooring products.

89.    As a result of this breach, Plaintiffs and the members of the Class suffered injury and deserve to be compensated for the damages they suffered.

**WHEREFORE**, Plaintiffs, Karen Steinlauf and William Steinlauf, individually, and on behalf of all others similarly situated, demand judgment against Defendants for compensatory damages, costs and interest as allowed by law, and for such other relief as the Court deems just, and demand a trial by jury on all issues so triable as a matter of right.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Class Members, seek the following relief against Defendants:

A. An order certifying this action as a class action under Federal Rules of Civil Procedure § 23, and defining the Class as requested herein;

B. A finding and declaration that Defendants' policies and practices of labeling and advertising the laminate wood products it sells in Florida as CARB compliant is unlawful;

C. Injunctive relief prohibiting Defendants from continuing to distribute and/or sell laminate flooring products that violate the CARB standards;

D. Restitution of all money and/or property that Plaintiffs and Class Members provided to Defendants for the purchase and installation of Defendants' laminate wood flooring products;

E. Damages in an amount according to proof, including actual, compensatory, and consequential damages incurred by Plaintiffs and Class Members;

F. Punitive damages in an amount according to proof;

G. Pre- and post-judgment interest on monetary damages and restitution;

H. An award to Plaintiffs and Class Members of reasonable attorneys' fees and costs; and

I. An award of such other and further relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury to the extent authorized by law.

**WHEREFORE**, Plaintiffs, Karen Steinlauf and William Steinlauf, individually, and on behalf of all others similarly situated, pray that upon final judgment, they may have and recover: trial by jury which is hereby demanded; judgment against Defendants, Lumber Liquidators, Inc., Lumber Liquidators Leasing, LLC, Lumber Liquidators Holdings, Inc., and Lumber Liquidators Services, LLC; pre-judgment interest as allowed by law; post-judgment interest as allowed by law; actual damages; cost of suit; and such other relief, at law or equity, to which Plaintiffs may be justly entitled.

Respectfully submitted this 13th day of March, 2015.

s/ Andrew F. Knopf
ANDREW F. KNOPF, ESQUIRE
Florida Bar No.: 658871
**KNOPF BIGGER**
1560 N. Orange Avenue, Suite 220
Winter Park, Florida 32789
Phone: (407) 622-2111
Fax: (407) 622-2112
Primary Email: andrew@knopfbigger.com
Secondary Email: burton@knopfbigger.com
Additional Email: stephanie@knopfbigger.com

And

SAM DAVID KNIGHT, ESQUIRE
Florida Bar No.: 637319
**BADHAM & BUCK, LLC**
2001 Park Place North, Suite 500
Birmingham, AL 35203
Telephone: (205) 521-0036
Facsimile: (205) 521-0037
*Counsel for Plaintiffs*